UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**FRANCIS NYARKOH-OCRAN,**

      **Plaintiff,**

              Case No. 2:13-cv-1120
              JUDGE SMITH
     **v.**           Magistrate Judge Abel

**THE HOME DEPOT USA, INC.** *et al.***,**

      **Defendants.**

## OPINION AND ORDER

Presently pending before the Court are the Defendants' Motion for Summary Judgment (Doc. 13); the Defendants' Motion to Strike "Plaintiff's Contra Motion in Opposition to Defendant's Motion for Summary Judgment" (Doc. 15); the Plaintiff's Motion for Extension of Time and/or Permission to Respond to Defendants' Motion for Summary Judgment (Doc. 16); and the Plaintiff's Motion to Extend Discovery and Modify the Scheduling Order Dated December 12, 2013 (Doc. 21).  For the reasons that follow, the Defendants' motion to strike and the Plaintiffs' motion to extend the discovery period are **DENIED**, and the Plaintiff's motion for extension and the Defendants' motion for summary judgment are **GRANTED**.

### I.    Background

Plaintiff Francis Nyarkoh-Ocran initially filed this action in the Franklin County Court of Common Pleas bringing claims for race/national origin discrimination, retaliation, wrongful termination in violation of public policy, and intentional infliction of emotional distress against Defendants The Home Depot USA, Inc. ("Home Depot"), and Lloyd Jarrell, Timothy Berry, and Miguel Torres, each of whom is employed by Home Depot.  The Defendants removed the action

to this Court on November 11, 2013. (Doc. 1.) Pursuant to the scheduling order entered December 12, 2013, discovery was to be completed by the parties by May 30, 2014, and dispositive motions were to be filed by July 11, 2014. (Doc. 7 at 4.) The Defendants timely moved for summary judgment on June 26, 2014. (Doc. 13.) The Plaintiff responded to the motion for summary judgment out of time and moved the Court for leave to do so, while the Defendants moved to strike his response brief. (Docs. 15 & 16.) Finally, the Plaintiff then filed a motion seeking to reopen the discovery period. (Doc. 21.)

The Plaintiff was formerly employed by Defendant Home Depot in various capacities prior to his termination in November 2011. He is African American and was born in Ghana. (Nyarkoh-Ocran Dep. 10, Doc. 13-20.) He was first employed by Home Depot in 1999, as a part-time Sales Associate at a store in Silver Spring, Maryland. (*Id.* at 39–40.) In April 2000, the Plaintiff transferred to Home Depot's store in Gahanna, Ohio, and, soon thereafter, transferred to the store on Cleveland Avenue in Columbus. (*See id.* at 40–41.) In June 2000, he resigned from Home Depot to take another job and attend school. (*Id.* at 43–44.)

In September 2001, the Plaintiff was rehired at the Cleveland Avenue store as a Night Crew Associate working full-time. (*Id.* at 47, 52.) In November 2005, after expressing interest in human resources work, he transferred to a Store Scheduler position. (*Id.* at 58–59.) In July 2006, he became a Human Resources Supervisor and began earning $15.00 per hour. (*Id.* at 61–62.) In June 2008, following elimination of his position, he transferred to a Special Services Department Supervisor position earning the same rate of pay. (*Id.* at 128.)

In February 2008, while the Plaintiff was still working as a Human Resources Supervisor, a store employee anonymously filed a complaint against him alleging that he was making female store employees uncomfortable through unwelcome text messages and telephone calls. (*See*

2

Defs.' Mot. Summ. J. Exs. 4 & 5, Docs. 13-5, 13-6.)  Defendant Berry, who at the time was the District Human Resources Manager, investigated the complaint.  (*See* Berry Dep. 106–107, 110–12, Doc. 13-23.)  Upon completing the investigation, Berry concluded that "there is evidence that the female associates identified through this process have had and to some degree continue to have uncomfortable feelings when interacting with [the Plaintiff].  The behavior and communication style of [the Plaintiff] has contributed to the discomfort."  (*See* Defs.' Mot. Summ. J. Ex. 5 at 1, Doc. 13-6.)  Berry reported his conclusions to Regional Human Resources Manager Michael Krivach, and together they recommended to the Plaintiff's store manager that the Plaintiff be given a final warning and be required to complete Home Depot's "respect" training.  (Berry Dep. 129–31, 153–54, Doc. 13-23.  *See also* Defs.' Mot. Summ. J. Exs. 4 at 4, Doc. 13-5 ("Francis will be issued a final counseling and attend respect training."), 5 at 2, Doc. 13-6 ("Associate was disciplined and coached.").)

In July 2008, the Plaintiff was promoted to the position of Merchandising Assistant Store Manager at the Gahanna store.  (Nyarkoh-Ocran Dep. 129–33, Doc. 13-20.)  Prior to the promotion, he had been earning $17.85 per hour.  (*Id.* at 134.)  With the promotion, he earned a salary of $48,000 per year with the opportunity for up to a 25% bonus depending on the sales performance of his store.  (*Id.* at 133–34.)  The Plaintiff does not know how the $48,000 salary was decided upon, nor does he know what other assistant store managers were earning.  (*Id.* at 135.)

In April 2009, as a result of a satisfactory performance evaluation by store manager Charles Fry, the Plaintiff received a 2% pay increase.  (*Id.* at 138.)  In February 2010, he transferred to an Operations Assistant Store Manager position.  (*Id.* at 139.)  He was replaced by a Caucasian male who was paid $1,960 per year less than what the Plaintiff had earned.  (Torres

3

Decl. ¶ 3, Doc. 13-25.)  One month after transferring to the operations position, the Plaintiff received a 2.12% pay increase.  (Nyarkoh-Ocran Dep. 140–42, Doc. 13-20.)

Starting in February 2010 and continuing until the termination of his employment in November 2011, the Plaintiff complained to Fry, Berry, and District Manager Lloyd Jarrell about his salary.  (*See* Pl.'s Resps. Defs.' Interrogs. 1, 15–16, Doc. 13-19.)  The Plaintiff believed that other operations managers were earning more money than he, but he is unable to recall from whom he learned that information.   (Nyarkoh-Ocran Dep. 147–49, Doc. 13-20.)  The Plaintiff did not think it was fair that he possibly earned less than other operations managers because the Gahanna store was the largest volume store in the district.  (*Id.* at 145.)

In January 2011, the Plaintiff was transferred to the Cleveland Avenue store where he also occupied the Operations Assistant Store Manager position.  (*Id.* at 142.)  According to the Defendants, the idea to transfer the Plaintiff to the Cleveland Avenue store while simultaneously transferring that store's Operations Assistant Store Manager, Emilio Russell, to the Gahanna store originated with a conversation the Plaintiff had with the Cleveland Avenue store's manager, Sharmarl King, regarding difficulties the Plaintiff was having with certain aspects of the operations position. (King Dep. 67–71, Doc. 13-22.)  According to King, after discussing the situation with Fry, they concluded that the Plaintiff would be a "better fit" working under King at the Cleveland Avenue store, while Russell would be more suited to working under Fry in Gahanna.  (*Id.* at 67.)  Specifically, both King and Russell had extensive operations experience, while the Plaintiff was relatively new to operations and Fry was "very weak" in that area of expertise. (Berry Dep. 196, Doc. 13-23.)  The Plaintiff contends that he was transferred against his will, and, while conceding that his salary remained the same after the transfer, claims that the transfer "affected [him] negatively."  (Nyarkoh-Ocran Dep. 142–43, 13-20.)

4

The Defendants contend that the Plaintiff's employment with Home Depot was eventually terminated after a second complaint was filed against him regarding inappropriate behavior toward a female employee. The complaint was made by store associate Doraine Warfield, who reported directly to the Plaintiff. (*Id.* at 181.) The investigation of the complaint revealed that the Plaintiff had attempted to date Warfield, who rejected his advances. (Defs.' Mot. Summ. J. Ex. 12 at 1, Doc. 13-13.) Following the rejection, Warfield claimed, *inter alia*, that the Plaintiff had asked others to persuade her to date him; that he told other associates that they were a couple; that, on one occasion, he pretended to be investigating a human resources complaint in order to lure her to a bowling alley for a date and then told her that if she complained to anyone he would fire her; that he asked another associate to tell her to meet him at a hotel and not bring her cellular telephone; and that he sent her text messages asking why she would not date him. (*Id.*) When interviewed about the complaint, the Plaintiff denied asking Warfield for a date, but admitted meeting her at the bowling alley, claiming that they met so that he could give her gas money, which she had requested from him. (Nyarkoh-Ocran Dep. 186–88, Doc. 13-20; Defs.' Mot. Summ. J. Ex. 14 at 3, Doc. 13-15.)

Following completion of the investigation, King recommended to Defendant Miguel Torres, Regional Human Resources Manager, that the Plaintiff's employment should be terminated because of the complaint, and Torres agreed. (King Dep. 34–35, Doc. 13-22; Torres Dep. 75–76, 97, Doc. 13-21.) According to Torres, the previous complaint against the Plaintiff and the final warning that he had been given led to their conclusion that he should be terminated. (Torres Dep. 75–76, Doc. 13-21.) The Plaintiff's employment was terminated on November 11, 2011. He was given a termination notice stating that:

> An investigation was conducted following the reporting of inappropriate and disrespectful behavior by [the Plaintiff] to an hourly associate. The investigation

5

>revealed that [the Plaintiff] engaged in questionable activity in violation of the work rules. It was also noted that [the Plaintiff] was admonished for similar conduct in the past. Therefore, he has an affirmative duty to avoid even the perception of inappropriate conduct. His employment is terminated effective 11/11/11.

(Defs.' Mot. Summ. J. Ex. 16, Doc. 13-17.)

## II. Discussion

The Court now will consider each of the pending motions in turn.

### A. Motion to Reopen Discovery

The Court first considers the Plaintiff's motion to reopen/extend the discovery period by "at least four months," which was filed on August 15, 2014. (Doc. 21.) In the motion, and in his response to the Defendants' motion for summary judgment, the Plaintiff generally represents that the Defendants have failed to meet their discovery obligations and are withholding discoverable materials. According to the Plaintiff, depositions of the Defendants were conducted on May 8 and 9, 2014, and he subsequently served additional requests for the production of documents to the Defendants. On June 20, 2014, the Defendants objected to these requests as untimely as they were made less than thirty days prior to the discovery completion deadline. (*See* Doc. 14-2 at 1.) The Plaintiff also implies that he relied upon informal promises from the Defendants to provide the documents he was requesting. However, the record cited by the Defendants indicates that no such promises were ever made or, at the very least, that they had been rescinded. (*See* Torres Dep. 21–23, Doc. 13-21.)

The Court denies the Plaintiff's request to reopen/extend the discovery period. Pursuant to Rule 16(b)(4) of the Federal Rules of Civil Procedure, a scheduling order may only be modified for good cause. "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements."

*Inge v. Rock Financial Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quotation omitted). Here, it cannot be said that the Plaintiff has been diligent in attempting to comply with the scheduling order. Despite the imminent expiration of the discovery period, he served additional discovery requests on the Defendants, but failed to also seek an extension of the period from the Court despite the fact that Rule 34(b)(2)(A)'s thirty day response time fell outside the May 30th discovery cutoff. He similarly failed to promptly move the Court for an extension even after receiving the Defendants' timeliness objections to those requests, which were mailed to him on June 20th. Rather, assuming he would have received the objections by June 23rd, he waited nearly eight weeks to request that the discovery period be reopened. During that period of delay, the Defendants moved the Court for summary judgment, the dispositive motion deadline expired, and the Plaintiff responded to the motion for summary judgment (with said response itself being filed three weeks late). Such inaction and inattention on the part of the Plaintiff do not amount to the diligence required by Rule 16(b)(4).

Finally, in determining that the Plaintiff has failed to demonstrate good cause for reopening the discovery period, the Court further notes the Plaintiff's failure to use proper discovery procedures. Despite his complaints about what he characterizes as bad faith on the part of the Defendants, the Plaintiff did not file a motion to compel discovery under Rule 37, nor did he otherwise ask the Court to intervene until this late hour.

**B.** **Motion to Strike and Motion for Leave to File Response Out of Time**

The Court next considers the related motions filed by the Defendants to strike the Plaintiff's response in opposition to their motion for summary judgment and the Plaintiff's motion for an extension of time to file that response. As the Defendants point out, the Plaintiff filed his response to the motion for summary judgment three weeks beyond the deadline

established by the local rules. The Defendants accordingly request the Court to strike the Plaintiff's response. Conversely, after filing his response, the Plaintiff belatedly moved for leave to do so out of time. (Doc. 16.)

The Defendants argue that the Plaintiff has failed to demonstrate excusable neglect, as required by Rule 6(b)(1)(B) in instances where a party moves for an extension of time after a deadline has expired. However, the Court notes that the Local Rules disfavor deciding a dispositive motion solely because of a party's failure to respond to that motion. *See* Local Rule 7.2(a)(2) ("Failure to file a memorandum in opposition may result in the granting of any motion that would not result directly in entry of final judgment or an award of attorneys' fees."). As such, the Court denies the Defendants' motion to strike and grants the Plaintiff's motion to file his response out of time. In reaching its decision on the motion for summary judgment, the Court has duly considered the Plaintiff's response brief.

**C.     Motion for Summary Judgment**

The Court finally turns to the Defendants' motion for summary judgment. Finding that no material dispute of fact exists and that the Defendants are entitled to judgment as a matter of law, the Court grants the motion.

**1.     Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). To avoid

8

summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587–88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). That is, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### 2. Law and Analysis

The Plaintiff has brought claims for race/national origin discrimination, retaliation, violations of the Equal Pay Act, wrongful termination in violation of public policy, and intentional infliction of emotional distress. The Court will discuss each of these claims in turn.

#### a. Race/National Origin Discrimination Arising from Termination

The Plaintiff's first claim is for race/national origin discrimination arising from his termination and is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* A plaintiff may establish a Title VII discrimination claim with direct evidence of discrimination or with indirect or circumstantial evidence that raises an inference of discrimination. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). "[D]irect evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger, Co.*, 319 F.3d 858, 865 (6th Cir. 2003). Despite disagreeing with the Defendants' assertion that he lacks direct evidence of discrimination, the Plaintiff fails to cite any evidence in the record that would establish without inferences that the Defendants took adverse employment actions against him because of his race and/or national origin. Instead, he complains that the Defendants failed to provide requested discovery that would allegedly contain evidence of discrimination. As stated in Part II.A *supra*, the Plaintiff failed to file any motions to compel the production of the requested discovery and the Court has declined to reopen the discovery period.

Claims for discrimination based on indirect evidence are analyzed under the familiar burden-shifting framework announced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this analysis, if a plaintiff establishes a prima facie case of

10

discrimination, the plaintiff "receives the benefit of a presumption that the employer unlawfully discriminated against him." *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004) (citing *Tex. Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).  The burden then shifts to the defendant-employer "to articulate some legitimate, nondiscriminatory reason" for the employment action in question.  *McDonnell Douglas*, 411 U.S. at 802.  Finally, "should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  *Burdine*, 450 U.S. at 253.  The ultimate burden of establishing that discrimination occurred remains with the plaintiff throughout the analysis.  *Id.*

A plaintiff may establish a prima facie case of Title VII discrimination by "demonstrating (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) that a similarly-situated employee outside the protected class or classes was treated more favorably than he."  *Dodd v. Donahoe*, 715 F.3d 151, 156 (6th Cir. 2013) (quotation omitted).  "The burden of establishing a prima facie case of disparate treatment is not onerous."  *Burdine*, 450 U.S. at 253.

A plaintiff can establish the final element of a prima facie case if he can show "that for the same or similar conduct he was treated differently than similarly-situated non-minority employees."  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).  In determining whether employees are similarly situated, the Sixth Circuit has stated that district courts:

> should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee. The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered "similarly-situated;" rather, as this court has held in [*Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796 (6th Cir. 1994)], the plaintiff and the

11

> employee with whom the plaintiff seeks to compare himself or herself must be similar in "all of the relevant aspects." *Pierce*, 40 F.3d at 802 (emphasis added).

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

Here, even recognizing that the Plaintiff's burden in establishing a prima facie case of discrimination is not onerous, and assuming that the Plaintiff has established the first three elements, the Plaintiff has failed to cite any evidence in the record showing that similarly situated Home Depot employees outside of his protected class were treated more favorably than he. Rather, the Plaintiff again "holds that records in the control of the Defendants will" support his claim. A plaintiff responding to a defendant's motion for summary judgment must point to evidence in the record from which a reasonable jury could find in favor of his or her claims. *See White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005). As the Plaintiff has failed to do so, the Court grants summary judgment to the Defendants as to his first cause of action.

### b. Retaliation

The Plaintiffs second cause of action is for retaliation in violation of Title VII. According to the Plaintiff, the Defendants retaliated against him for making complaints to Home Depot management about his salary. Pursuant to Title VII, it is unlawful for an employer to discriminate against an employee "because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). As with other Title VII claims, retaliation claims may also be proved through indirect evidence using the *McDonnell-Douglas* framework. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (quotations omitted). To establish a prima facie claim of retaliation, the Plaintiff must demonstrate that:

>  (1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action.

*Id.* (quotations omitted).

The Defendants argue that summary judgment is appropriate as to the Plaintiff's retaliation claim because the record lacks evidence that the Plaintiff engaged in protected activity. Specifically, they contend that the Plaintiff never suggested that he was being paid less than other assistant store managers because of his race or national origin. The Court agrees.

"The opposition clause protects not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices." *Laster*, 746 F.3d at 730. However, complaints to management must be related to employment practices made unlawful by Title VII. An example from the Equal Employment Opportunity Commission's Compliance Manual is directly on point:

> CP (African-American) requests a wage increase from R, arguing that he deserves to get paid a higher salary. He does not state or suggest a belief that he is being subjected to wage discrimination based on race. There also is no basis to conclude that R would reasonably have interpreted his complaint as opposition to race discrimination because the challenged unfairness could have been based on any of several reasons. CP's protest therefore does not constitute protected "opposition."

EEOC, COMPLIANCE MANUAL § 8-II.B.2, Example 4 (updated May, 20, 2008) *available at* http://www.eeoc.gov/policy/docs/retal.html. *See also Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 399 (2008) (Courts and litigants may properly look to EEOC Compliance Manual for guidance).

In the instant case, the record is undisputed that: (1) the Plaintiff complained to management that other assistant managers earned a higher salary than he; and (2) the Plaintiff felt that was unfair given that he worked at the highest volume store in the district. As with the

example quoted above, the Plaintiff cites nothing in the record from which a reasonable jury could conclude that the purported salary disparity was the result of his race, and there is nothing in the record to suggest that Home Depot management reasonably should have so interpreted his complaint. Accordingly, the Court grants summary judgment to the Defendants as to the Plaintiff's claim of retaliation.

### c. Equal Pay Act

The Complaint makes various references to the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1). Pursuant to that Act, a covered employer generally may not discriminate between the sexes as to wages paid "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). As with previous claims, the Plaintiff again implies that the Defendants are withholding discoverable materials, but fails to identify evidence that female employees were paid more than he for comparable work. As such, to the extent that his complaint can be construed as stating a claim under the Equal Pay Act, summary judgment is awarded to the Defendants.

### d. Compensation Discrimination Based on Race/National Origin

The Complaint also can be construed as bringing a claim pursuant to Title VII alleging that Home Depot paid the Plaintiff a lower wage than other employees because of his race and/or national origin. "To make out a *prima facie* case of discrimination in compensation, a plaintiff must show that he was a member of a protected class and that he was paid less than a non-member for work requiring substantially the same responsibility." *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008). In other words, a plaintiff "must show that his circumstances are 'nearly identical' to those of a better-paid employee who is not a member of

the protected class." *Id.* at 523.  As the Plaintiff has failed to cite any evidence in the record tending to establish that employees outside his protected class were paid more than him for similar work, the Court grants summary judgment to the Defendants as to the Plaintiff's claims for wage discrimination.

### e. Wrongful Termination in Violation of Public Policy

The Plaintiff's third cause of action is for wrongful termination in violation of public policy.  The elements of such a claim are:

> 1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).
>
> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).
>
> 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).
>
> 4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

*Collins v. Rizkana*, 652 N.E.2d 653, 657–58 (Ohio 1995) (emphasis in original, quotations omitted).  The first two elements are questions of law.  *Jermer v. Siemens Energy & Automation, Inc.*, 395 F.3d 655, 656 (6th Cir. 2005) (citing *Collins*).  To establish the second element, "[i]t must be sufficiently clear from the employee's statements that he [was] invoking governmental policy that a reasonable employer would understand that the employee relie[d] on the policy as the basis for his complaint."  *Id.*  As there is no evidence that the Plaintiff in any way invoked public policy at any time or in relation to the events giving rise to his termination, the Court grants summary judgment to the Defendants as to his public policy claim.

### f.    Intentional Infliction of Emotional Distress

The Plaintiff's fourth cause of action is a claim for intentional infliction of emotional distress.  "[A] plaintiff may establish such [a claim] only if 'the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999) (quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 453 N.E.2d 666, 671 (Ohio 1983), abrogated on other grounds by *Welling v. Weinfeld*, 866 N.E.2d 1051 (Ohio 2007)).  However, as noted by the Sixth Circuit, "an employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more." *Id.*

In support of his claim for intentional infliction of emotional distress, the Plaintiff resorts to quoting allegations from his complaint.  However, doing so is insufficient to survive a motion for summary judgment. *See Warf v. U.S. Dep't of Veterans Affairs*, 713 F.3d 874, 878 (6th Cir. 2013) ("To defeat a motion for summary judgment a plaintiff can no longer rely on the conclusory allegations of its complaint." (quotations omitted)).  Accordingly, the Court further grants summary judgment to the Defendants as to the Plaintiff's claim for intentional infliction of emotional distress.

### III.    Conclusion

For the above stated reasons, the Defendants' Motion for Summary Judgment (Doc. 13) and the Plaintiff's Motion for Extension of Time and/or Permission to Respond to Defendants' Motion for Summary Judgment (Doc. 16) are **GRANTED**.  Further, the Defendants' Motion to Strike "Plaintiff's Contra Motion in Opposition to Defendant's Motion for Summary Judgment" (Doc. 15); and the Plaintiff's Motion to Extend Discovery and Modify the Scheduling Order

Dated December 12, 2013 (Doc. 21) are **DENIED**.  The Clerk is directed to enter judgment in favor of the Defendants and close this matter.  The Clerk shall terminate Documents 13, 15, 16, and 21.

**IT IS SO ORDERED.**

          */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**